IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

YELENA I. GOFORTH                                                                                         PLAINTIFF

      v.                               Civil No. 11-5169

DEPUTY RUTH; DEPUTY JOHNSON;
DEPUTY CONE; DEPUTY JAMES;
DEPUTY REEVES; SHERIFF HELDER;
DEPUTY SPRINGSTON; DEPUTY
CAREINGER; and DEPUTY SALCIDO                                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

      This is a civil rights action filed by the Plaintiff, Yelena Goforth, pursuant to 42 U.S.C. § 1983. The case is before me for a determination of whether service of process should issue. For the reasons stated below, it is my recommendation that the complaint be dismissed.

### 1. Background

      According to the allegations of the amended complaint (Doc. 14) and addendum (Doc. 19), Deputy Salcido violated Plaintiff's right to privacy by placing three letters addressed to Plaintiff on a table where they could have been tampered with and by yelling information about Plaintiff's son and his current situation. Plaintiff further alleges Deputy Salcido violated Plaintiff's rights by: "cutting off" the phone on two occasions when Plaintiff was attempting to use it; and returning Plaintiff's mail because inmates were only allowed to mail two letters at the detention center's expense.

      With respect to Deputy Scott, Plaintiff alleges Deputy Scott violated her rights in the following ways: she was rude to Plaintiff; she promised her "phone time" but did not give it to her; she promised her yard time but did not give it to her; she denied her a shower until after Plaintiff went to sleep; she denied her library time; and she followed Plaintiff too closely, rushing her and almost stepping on her heels, only to be mean and malicious to the Plaintiff. Plaintiff alleges this latter incident occurred after

she indicated she was not a supporter of President Obama.

With respect to Deputy Shipley, Plaintiff maintains Deputy Shipley lied to prosecutors by telling them that Plaintiff threatened her and one or two inmates. The charges brought as a result of the alleged threats were dismissed. Finally, she maintains her food tray was placed on the floor by Deputy Shipley on one occasion. Plaintiff states she was insulted and felt she was treated like she was less than human.

With respect to Deputy Ruth and Deputy Careinger, Plaintiff states they also placed her food tray on the floor. Deputy Ruth is alleged to have put Plaintiff's tray on the floor a single time while Deputy Careinger was alleged to have done it twice.

With respect to Chief Deputy Cantrell, Plaintiff alleges she wrote him on at least three occasions complaining about the abuse and injustice. Despite this, Plaintiff states she did not get a single reply.

With respect to Major Denzer, Plaintiff alleges he personally gave an order that prohibited her from calling her Father in Russia. Plaintiff also alleges he failed to address her complaints about abuse and injustice in her treatment.

With respect to Deputy Sanders, Plaintiff states she was rude and arrogant and threw a letter at the Plaintiff on one occasion, a request on another occasion, and a piece of clothing on a third occasion. Plaintiff alleges Deputy Sanders also made a statement about the Plaintiff's mental health status in front of two deputies while at the library.

With respect to Deputy Center, Plaintiff states she is often rude and has a rough approach. Plaintiff alleges Deputy Center would just start yelling at her, would deny her food, would insist that Plaintiff come to the doorway to speak with her, close the door in her face, and would not admit that two letters of Plaintiff's outgoing mail, submitted during Deputy Center's shift, never reached the addressees.

With respect to Deputy Reeves, Plaintiff states she made a statement in front of other detainees

to the effect that there was something wrong with the Plaintiff mentally. Deputy Reeves is also alleged to have complained because Plaintiff asked too frequently to place a call to Russia.

With respect to Sheriff Helder, Plaintiff alleges he never replied to any of her desperate letters in which she asked that her situation be changed. Plaintiff alleges she compared the WCDC to a fascist facility. She indicates she felt the Defendants wanted her dead and/or were disappointed that she was not.

With respect to Captain Livermore, Plaintiff alleges he did not respond when she wrote him about being called names, her food being placed on the floor, and being accused of being mentally unstable by Deputy Sanders and Deputy Reeves. Furthermore, she asserts she was falsely accused of terroristic threatening without ever having been spoken to.

Plaintiff indicates she would like to add Deputy Spears as a Defendant. She alleges Deputy Spears was ugly and rude and denied the Plaintiff use of the phone and medication.

Plaintiff also states she would like to add Sergeant W as a Defendant. Plaintiff cannot recall the last name of this Defendant but alleges she yelled at the Plaintiff and put shackles around her legs so tightly that she could not walk without pain.

## 2. Discussion

Plaintiff's claims are clearly subject to dismissal as they are frivolous or fail to state claims upon which relief may be granted. First, "defamation, per se, is not actionable under section 1983." Underwood v. Pritchard, 638 F.2d 60, 62 (8th Cir. 1981); see also Wade v. Goodwin, 843 F.2d 1150, 1152 (8th Cir. 1988)(A cause of action for damage to character or reputation is not cognizable under § 1983). The Supreme Court has held that a person's interest in her reputation is not considered liberty or property protected by the due process clause. Paul v. Davis, 424 U.S. 693 (1976). Thus, "regardless of whom a plaintiff chooses to sue, section 1983 does not address an alleged injury to reputation." Idema v. Wager, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000), aff'd 29 Fed. Appx. 676 (2d Cir. 2002).

Second, with respect to the terroistic threatening charge, the "Constitution does not mention malicious prosecution." Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001). The Eighth Circuit has "uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." *Id.*

Third, "[v]erbal threats do not constitute a constitutional violation." Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language do not state a claim of constitutional dimension. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); Martin, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim); cf. Burton v. Livingston, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

Fourth, "the extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe." Holloway v. Magness, 666 F.3d 1076, 1079 (8th Cir. 2012). "Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner." Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989)(internal quotation marks and citation omitted). Telephone access may be restricted so long as the restrictions are reasonable and are rationally related to legitimate security interests. Id.; see also Martin v. Tyson, 845 F.2d 1451,

1458 (7th Cir. 1988)(upholding policy limiting pre-trial detainee's telephone access to every other day).  In this case, Plaintiff challenges the prohibition of her using the telephone to contact her Father in Russia.  Other than this restriction, Plaintiff complains of only a couple of occasions when the period of telephone usage was terminated while she was still on her hour out.  She does not allege her telephone usage was restricted in other ways or that she was prohibited telephone use in general.  Additionally, Plaintiff had other means of communicating with persons outside the facility through the use of mail and personal visits.   No claim of constitutional dimension is stated.

Fifth, Plaintiff maintains Sheriff Helder, Major Denzer, and Captain Livermore ignored her grievances and letters about her treatment by jail personnel.   No independent constitutional right to access to a grievance procedure exists.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)("[A] prison grievance procedure is a procedural right only").  "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."  Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  The failure of detention center personnel to respond to her grievances did not impair Plaintiff's right of access to the courts.

Sixth, with respect to her mail, Plaintiff maintains three items of her personal mail were placed on a table rather than brought to her cell; on several occasions her outgoing mail did not reach its destination; and her outgoing mail was returned to her on occasion because she had exceeded the two letter limitation on personal mail at the detention center's expense.

Inmates have a First Amendment right of free speech to send and receive mail.  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."  Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).  Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests."

Turner v. Safely, 482 U.S. 78, 89 (1987). "[E]conomic factors may . . . be considered . . . in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bell-Bey v. Williams, 87 F.3d 832, 838 (8th Cir. 1996)(citing Bounds v. Smith, 430 U.S. 817, 824-25 (1977)).

Isolated instances of outgoing mail not arriving at its destination are insufficient to state a constitutional claim. Similarly, a single instance during which Plaintiff's mail was placed on a table is insufficient to state a constitutional claim. Here, Plaintiff has not suggested there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference--an isolated incident of mail tampering is usually insufficient to establish a constitutional violation). This is insufficient.

With respect to the limitation on the number of personal letters that may be mailed at detention center, Plaintiff does not contend there was a general limitation placed on the number of legal or personal letters an inmate could mail at her own expense. Nor does she challenge a regulation that places a specific limit on the amount of postage available to indigent prisoners for legal mail. Instead, she objects to the limitation on free postage for personal letters. A detention facility is not required to provide unlimited free postage. Bounds, 430 U.S. at 824-25

Plaintiff's final claim concerns her conditions of confinement. Specially, she contends that on unspecified dates she was denied phone time, yard time, a shower, food, medication and time in the library. She also maintains that her food tray was placed on the floor on three separate occasions.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See

Farmer v. Brennan, 511 U.S. 825, 832 (1994).

      The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII; see also Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or convicted inmates).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

      The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Wilson v. Seiter, 501 U.S. 294, 305 (1991).  However, "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets."  Gates v. Cook, 376 F.3d 323, 333 (5th Cir. 2004)(citation omitted).  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).

      In this case, Plaintiff complains of only isolated incidents.  She does not allege she was denied use of a phone in general but only that she was not allowed to call Russia and on several occasions the phone had been turned off before her hour out of the cell was over.  Similarly, she does not allege she had no opportunity to exercise but instead on a few occasions she was denied yard time.  Likewise, with respect to the shower, she does not maintain she was denied a shower for a

period of time; instead, she alleges that she was already sleeping when detention center personnel offered her shower time. With respect to her diet, she does not allege she was provided an inadequate diet; instead, she alleges that on three occasions her food tray was placed on the floor. In connection with her medication, Plaintiff only asserts that a single deputy withheld her medication on some unspecified date; she does not otherwise allege a delay or denial of medical treatment. Finally, she indicates she was denied library time by one of the Defendants; however, she does not maintain she had no access to the library or that the lack of access precluded her from filing documents with the Court. In short, I do not believe Plaintiff has alleged a claim of constitutional dimension as she has failed to allege that she was deprived of a single, identifiable human need. See e.g., Tokar v. Armontrout, 97 F.3d 1078, 1082 (8th Cir. 1996).

While listed as Defendants, Deputy Johnson, Deputy Cone, Deputy James, and Deputy Springston have no claims asserted against them in the amended complaint or addendum. They should be dismissed as Defendants.

Plaintiff has asserted claims against the following individuals who are not named Defendants, Captain Livermore, Deputy Center, Chief Deputy Cantrell, Major Denzer (incorrectly identified as Major Denzell), Deputy Sanders, Deputy Scott and Deputy Shipley. As the claims against these individuals are discussed in this report and recommendation, an order will be entered directing the Clerk to add them as Defendants.

Finally, Plaintiff asks to add as Defendants Deputy Spears and Sergeant W. As the claims against these individuals are also discussed in this report and recommendation, an order will be entered directing the Clerk to add them as Defendants.

### 3. Conclusion

Accordingly, I recommend this case be dismissed prior to service of process as the claims are frivolous and do not state claims of constitutional dimension. The dismissal of this case will constitute

a strike under 28 U.S.C. 1915(g).  The Clerk should be directed to place a § 1915(g) strike flag on the case.

**Plaintiff has fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of June 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE